# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TERRANCE J. SHAW,

        Plaintiff,

v.

BRIAN CHAPMAN, TONYEKA NOEL, and TODD THILLEMANN,

        Defendants.

Case No. 20-CV-852-JPS

**ORDER**

## 1.    INTRODUCTION

Plaintiff Terrance J. Shaw, a former inmate at Racine Correctional Institution ("RCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging his rights under the Americans with Disabilities Act, the Rehabilitation Act, the Eighth Amendment, and the First Amendment were violated. (Docket #1). On July 8, 2020, the Court screened the complaint and allowed Plaintiff to proceed with a First Amendment retaliation claim against Defendants Brian Chapman ("Chapman"), Tonyeka Noel ("Noel"), and Todd Thillemann ("Thillemann"). (Docket #11).

On May 28, 2021, Defendants filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies. (Docket #18). This motion is fully briefed, and, for the reasons explained below, the Court will grant it. Additionally, Plaintiff has pending motions to withdraw consent to proceed before a magistrate judge, (Docket #13), for a continuance, (Docket #22), for merit-related discovery, (Docket #27), and for summary judgment on the merits, (Docket #32). Because the Court will

grant Defendants' motion for summary judgment, it will deny Plaintiff's pending motions as moot.

## 2. LEGAL STANDARDS

### 2.1 Summary Judgment

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

### 2.2 Exhaustion of Prisoner Administrative Remedies

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). A prisoner must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement

furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

### 2.2.1 Inmate Complaint Review System[1]

The Wisconsin Department of Corrections ("DOC") maintains an inmate complaint review system (the "ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that personally affect the inmate or institution environment, including civil rights claims." *Id.* § DOC 310.01(2)(a). Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id*. § DOC 310.05.

Plaintiff must comply with the following rules to exhaust his or her administrative remedies under the ICRS. First, "[p]rior to filing a formal complaint, an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." *Id.* § DOC 310.07(1)[2]. Second, if a resolution is not reached, an inmate must file a signed complaint with the Institution Complaint Examiner (the "ICE")

---

[1] In Wisconsin, the administrative procedures for inmate complaints are outlined in Wisconsin Administrative Code ch. DOC 310 (2018) (effective April 1, 2018).

[2] "The ICE may request inmates to provide evidence of having followed the specified process." Wis. Admin. Code § DOC 310.07(1).

within fourteen days[3] of the events giving rise to the complaint by "placing it in a receptacle designated for complaints or by submitting it to the ICE office through institution or USPS mail." *Id.* § DOC 310.07(2), (8). "The ICE shall collect and date stamp all complaints with the date collected" and must "give written notice to the inmate within [ten] days of collection that the complaint has been received." *Id.* § DOC 310.10(1), (4).

Once the complaint is received, the ICE shall either reject[4] the complaint or send a recommendation to the appropriate reviewing authority[5] (the "RA") within thirty days from the date of receipt. *Id.* § DOC 310.10(9). If the complaint is rejected, the inmate may appeal the rejection to the appropriate RA within ten days. *Id.* § DOC 310.10(10). If the complaint is not rejected, the ICE issues a recommendation of either dismissal or affirmance to the RA. *Id.* § DOC 310.10(9), (12). The RA will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

---

[3]However, if an inmate wishes to file a complaint after the fourteen-day deadline, the "inmate shall request to file a late complaint in the written complaint and explicitly provide the reason for the late filing." *Id.* § DOC 310.07(2). Whether or not the late complaint will be accepted is "[a]t the discretion of the ICE," who will decide whether the "late complaint may be accepted for good cause." *Id.* "Good cause" is defined as "substantial grounds, justification, or reason to take a certain action as determined by the examiner." *Id.* § DOC 310.03(9).

[4]Additionally, the "ICE may return a complaint within 10 days if it does not meet the criteria under s. DOC 310.07 (1), (3), (4), and (5) to permit the inmate to resubmit the complaint after correcting issues noted by the ICE. Inmates shall be given one opportunity to correct and resubmit a returned complaint. The ICE shall grant 10 days for receipt of the corrected complaint." *Id.* § DOC 310.10(5).

[5]The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." *Id.* § DOC 310.03(15).

Third, if the RA accepts the ICE's recommendation to dismiss the complaint, the inmate must appeal the decision to the Corrections Complaint Examiner (the "CCE") within fourteen days[6]. *Id.* §§ DOC 310.09(1), 310.12. "The CCE may accept, return, or recommend rejection of an appeal or complaint." *Id.* § DOC 310.12(2). For all accepted appeals, the CCE shall recommend that the RA's decision be affirmed or dismissed, in whole or in part, and send its recommendation to the Secretary of the Department of Corrections (the "Secretary") within forty-five days of receiving the appeal. *Id.* § DOC 310.12(9). The Secretary shall affirm or dismiss the CCE's recommendation, in whole or in part, or return the appeal to the CCE for further investigation, within forty-five days following the receipt of the CCE recommendation. *Id.* § DOC 310.13(1)–(2). Finally, the inmate exhausts his or her administrative remedies when he or she receives[7] the Secretary's decision. *Id.* § DOC 310.13(2), (3).

## 3. RELEVANT FACTS

Plaintiff was incarcerated at RCI when the alleged events took place. (Docket #1 at 1). In May 2018, Plaintiff, AHSUM Frazier, and ICE Michelle Bones ("ICE Bones) met with the Health Service Unit ("HSU") to discuss Plaintiff's medical issues and to determine what housing could accommodate him. (Docket #21-2 at 17). After the meeting, HSU implemented a medical restriction that required Plaintiff to be housed in a

---

[6]An inmate's appeal filed after the fourteen-day deadline *may* be accepted if the CCE determines that there is good cause for the late filing. *Id.* § DOC 310.12(6).

[7]"If the inmate does not receive the Secretary's written decision within [ninety] days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted, unless the time has been extended under sub. (1)." *Id.* § DOC 310.13(4).

wheelchair accessible wet cell (a cell with a toilet) due to his medical conditions. (*Id.* at 17). In accordance with the HSU medical restriction, Plaintiff was transferred from the Jefferson Unit, which did not have compliant cells, to the Green Unit, which did. (*Id.*)

On October 30, 2018, Noel locked Plaintiff in his Green Unit cell for several hours. (Docket #30 at 1; Docket #21-2 at 2). Later that day, Plaintiff wrote a letter to Warden Kemper, Security Director Wells, Chapman, and Dr. Wilinski about Noel locking him in the cell. (Docket #30 at 1). Plaintiff alleges that as a result of filing a letter complaining about Noel's actions on October 30, 2018, he was retaliated against by Noel, Chapman, and Thillemann on November 7, 2018. (Docket #1 at 6, 8–10; Docket #30 at 1).

Specifically, Plaintiff alleges that, on November 7, 2018, Thillemann ordered Plaintiff to pack up his stuff because he was being moved back to the Jefferson Unit per Noel's orders. (Docket #21-2 at 11, 18). Plaintiff told Thillemann that he could not be moved to the Jefferson Unit because he had a medical restriction and because non-medical staff could not order him to move. (*Id.*) Plaintiff urged Thillemann to confirm his medical restriction by looking it up on the computer or calling AHSUM Frazier or ICE Bones. (*Id.*) Thillemann refused and told Plaintiff that he would be sent to segregation if he did not pack up and move. (*Id.*) Plaintiff alleges that he began to have a panic attack. (*Id.*) He asked Thillemann to call for a crisis counselor. (*Id.*) Instead, Thillemann called Noel. (*Id.*) After they spoke, Thillemann told Plaintiff that no crisis counselor was coming. (*Id.*) He also warned Plaintiff that, if he did not pack up and move immediately, instead of going to segregation, he would be placed in observation. (*Id.*) Plaintiff did not want to be put in observation, and he agreed to move to the Jefferson Unit. (*Id.*)

When Plaintiff reached the Jefferson Unit, he explained his situation to the staff. (*Id.* at 11). The Jefferson Unit staff looked up the HSU medical restriction on the computer and confirmed that Plaintiff was correct. (*Id.*) Chapman came to the Jefferson Unit to talk to the staff and Plaintiff. (*Id.* at 18). Chapman informed Plaintiff that he was moved because of Noel and the letter Plaintiff had written about Noel's actions on October 30, 2018. (*Id.*) Chapman told Plaintiff that, if he did not have a problem with Noel, he could move back to the Green Unit. (*Id.*) Plaintiff said he did not have a problem with Noel and that he was only using his legal due process to address his complaint. (*Id.*) On Chapman's orders, Plaintiff was immediately moved back to his Green Unit cell. (*Id.*) Later that day, Plaintiff wrote a letter to ICE Bones, AHSUM Frazier, and Chapman regarding the incident. (*Id.* at 17).

### 3.1 Plaintiff's ICRS Complaints

#### 3.1.1 RCI-2018-25294 – October 30, 2018 Incident

On November 5, 2018, Plaintiff submitted a complaint regarding the October 30, 2018 incident with Noel. (*Id.* at 2). The complaint was received by the ICE office on November 9, 2018. (*Id.*) The ICE returned the complaint to Plaintiff on November 16, 2018. (*Id.*) Plaintiff resubmitted the complaint on November 27, 2018. (*Id.*; Docket #25-1 at 3–4). The ICE acknowledged the complaint on December 12, 2018 and assigned it number RCI-2018-25294. (Docket #25-1 at 3–4). ICE Bones recommended that the complaint be affirmed on January 8, 2019. (*Id.*) The RA, Warden Kemper, affirmed the ICE recommendation on January 8, 2019. (*Id.* at 5). Plaintiff appealed the decision to the CCE. The appeal was received on January 14, 2019, and the CCE acknowledged it on January 15, 2019. (*Id.* at 6). The CCE recommended the appeal be affirmed on January 18, 2019. (*Id.*) Plaintiff appealed the CCE

decision to the Secretary, and his appeal was received on January 14, 2019 and acknowledged on January 15, 2019. (*Id.* at 7). The Secretary affirmed the CCE recommendation on February 25, 2019. (*Id.*)

### 3.1.2   RCI-2018-26151 – November 7, 2018 Incident

On December 17, 2018, the ICE office received Plaintiff's complaint regarding the November 7, 2018 incident and assigned it number RCI-2018-26151. (Docket #21-2 at 11). Plaintiff's complaint had a signed date of December 16, 2018. (*Id.*) The complaint form asks the inmate to answer three questions. (*Id.*) Question two asks, "[w]ith whom did you attempt to resolve your **ONE** issue; and what was the result of this attempt prior to submitting this complaint? Send any documentation you have that supports your attempt to resolve your claims." (*Id.*) Plaintiff answered by writing:

> See my Exhibits–A, B, C, D, E, F, G, H, I, J, K and L, – and also review my Complaint Number RCI-2018-25294– to see all the staff I wrote to in an attempt to get relief.
>
> The Exhibits–A through L are identical as the Exhibits in RCI-2018-25294.
>
> While all this was going down in the moment, I asked to see Captain Chapman, so I could explain my situation to him in person, but CO Tillman [sic] said Captain Chapman wasn't going to talk to me about my Exhibit–H, a few days ago, and now that I have exhausted the chain of command I am following this one issue complaint.

(*Id.*) Notably, Exhibit H is a letter Plaintiff wrote to Chapman dated November 22, 2018. (*Id.* at 13–14).

On December 21, 2018, the ICE sent Plaintiff a receipt acknowledging that his complaint was received. (*Id.* at 1). On January 14, 2019, ICE Bones rejected the complaint because it was filed beyond the fourteen-day time limit. (*Id.* at 2–3). The rejection comment provides the following:

Page 8 of 18
Case 2:20-cv-00852-JPS   Filed 11/16/21   Page 8 of 18   Document 35

The complainant states that staff ordered him to move from Green unit to Jefferson unit on 11/7/2018. He states this move was not to a wheelchair accessible wet cell with grab bars and staff inappropriately and unprofessionally tried to move him.

The complainant filed this complaint on 12/16/18. He lists the date of incident as 11/7/18. This complaint was received by this office on 12/17/18.

Upon review of the complainant's previous submissions in the ICTS Database, there are no previous submissions of this complaint issue. This complaint involves Sgt. Noel and her specific actions on 11/7/18 regarding ordering him to move from Green Unit to Jefferson Unit. If this complaint was previously filed with this office, it would have had a previous date stamp in the "date received" box, been scanned into the ICTS database, and had an accompanying return letter. It does not have any of these things associated with it.

It is noted that a separate complaint, accepted as RCI-2018-25294, written in regards to Sgt. Noel as well, but specific to her actions on 10/30/18 when she confined him to his cell in violation of his due process, was received initially on 11/9/18 (signed on 11/5/18 by the complainant), returned to the complainant on 11/16/18, and resubmitted to this office on 11/27/18.

This is a separate issue and filing than RCI-2018-25294.

Upon review of the timeframe, it is noted that the date of incident, 11/7/18, and the date of filing, 12/16/18, are 39 days apart. This is well outside the 14-day filing requirement in accordance with DOC 310.

Per DOC 310.10(6)(e) The ICE may reject a complaint for "The Inmate submitted the complaint beyond 14 days after the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time limits." The complainant makes no request for good cause in his complaint.

Page 9 of 18
Case 2:20-cv-00852-JPS   Filed 11/16/21   Page 9 of 18   Document 35

> The complainant has filed numerous complaints and is well aware of the filing requirement outlined in DOC 310. Previous recent Rejections involving the 14-day filing requirement include RCI-2018-15027 and RCI-2018-14023.
>
> It is clear in the statue that good cause is "determined by the examiner". Any request or need for good cause is evaluated on a case-by-case basis and is determined at the ICE's discretion. Good Cause for a delay in filing was not requested by the complainant. Per this ICE, good cause does not exist and is not granted.
>
> The complainant has failed to properly file this complaint in accordance with DOC 310, therefore not exhausting his administrative remedies in accordance with DOC 310.05. This complaint is rejected for failing to be properly filed within 14 days from the date of the incident as outline above.

(*Id.*)

On the same day that Plaintiff received the rejection (January 14, 2019), he filed an appeal of the rejection. (*Id.* at 29). In his rejection appeal, Plaintiff stated that the signature date of "12-16-2018" was a typo and it should have been "11-16-2018." (*Id.*) Additionally, Plaintiff provided the following reasons for why his complaint should not be rejected:

> The actual date was <u>11-16-2018</u>, which makes it timely and within 14 days from the date of the incident of when I also filed my November 5, 2018 Complaint Number RCI-2018-25294. Both incidents occurred simultaneously, but I'm not supposed to file a complaint with multiple issues. Therefore, I wrote RCI-2018-25294 on November 5, 2018 and this REJECTED Complaint RCI-2018-26151 the following week so I have one complaint per week as the ICE requires, unless the ICE appropriately uses ICE Discretion to allow it for good cause.
>
> . . .

> If you look at my DOC-400 RCI-2018-26151 (that should correctly have been dated 11-16-2018) in the 2nd section, line 6, I stated ". . .a few days ago, . . ." and obviously 12-16-2018 is NOT ". . .a few days ago, . . ." but 11-16-2018 IS ". . .a few days ago, . . ." Additionally, if you look at my Exhibit-H in the Re: section of my letter I state to Captain Chapman that: "ICE M. Bones's letter to me dated 11/16/18 directing me to write to you and explain my follow-up with you about the inappropriate move to Jefferson Unit by Sergeant Noel on November 7, 2018."
>
> My above two quotes from my RCI-2018-26151 lends credibility that by a preponderance of the evidence, more likely than not, 12-16-2018 IS a TYPO and it actually was 11-16-2018.
>
> So based on my above explanation, please RECONSIDER AND ACCEPT, NOT REJECT my Complaint.

(*Id.*)

On January 15, 2019, Plaintiff's rejection appeal was received, and Plaintiff submitted an interview/information request that provided more information to support his rejection appeal. (*Id.* at 5, 9, 29, 33).

> Yesterday, 01-14-19, I sent you my DOC-2182 explaining why I believe my RCI-2018-26151 is **NOT** untimely, or miniscule/frivilous if at all. In this DOC-761 I will further clarify why I believe this. In my DOC-400B RCI-2018-25294, I requested a psychologist because I was having a crisis (panic attack). That psychological distress lasted several days from Sgt. Noel et al. bullying me inappropriately. Therefore the **EXACT** starting date is flexible for a few days until after my staff caused psychological distress subsided and I could again sleep and eat normally. Therefore, when **ALL** factors involved are considered, my RCI-2018-26151 **WAS** timely filed.
>
> When I am in the midst of psychological distress caused by the RCI staff perpetrators, I cannot be expected to be perfect when counting days to a miniscule/frivolous degree.

(*Id.* at 33–34). On January 16, 2019, Plaintiff's rejection appeal was acknowledged, and ICE received Plaintiff's interview/information request. (*Id.* at 5, 9, 33–34). Also, on January 16, 2019, the RA, Warden Kemper, affirmed the rejection of Plaintiff's complaint, stating that the "complaint was appropriately rejected by the ICE in accordance with DOC 310.10(6)." (*Id.* at 6, 9–10).

**4. ANALYSIS**

Defendants argue that Plaintiff has not exhausted his administrative remedies on the claim against them and, therefore, the case must be dismissed. (Docket #19). Plaintiff argues that there is a genuine dispute of material fact regarding whether or not he exhausted his administrative remedies, and, therefore, Defendants' motion for summary judgment should be denied. (Docket #26 at 4).

To start, it is undisputed that RCI-2018-26151 is the only complaint Plaintiff filed regarding the November 7, 2018 incident. The only dispute is whether Plaintiff submitted the complaint on December 16, 2018, or that date was a typo and Plaintiff actually submitted it on November 16, 2018. Plaintiff's argument that he submitted his complaint on November 16, 2018 is unavailing for several reasons.

First, the Seventh Circuit addressed similar facts in *Lockett v. Bonson*, 937 F.3d 1016 (7th Cir. 2019). In *Lockett*, the ICE claimed that the facility had no record of Lockett filing an appeal of the dismissal of his complaint. In contrast, Lockett claimed that he had filed an appeal, but did not receive a receipt acknowledging his appeal. *Id.* at 1025–26. The Seventh Circuit explained that Wisconsin has a system that requires a prisoner receive a receipt after filing a complaint. *Id.* at 1026. The court further explained that the "receipt plays a very significant role in the complaint process," as well

as a plaintiff's "ability to preserve his right to initiate litigation in the district court." *Id.* Reading the regulations in their totality, the Seventh Circuit concluded that Lockett "was obliged to regard the absence of receipt as a red flag [and that] he should have undertaken, through the complaint procedure, an inquiry to ascertain why he had not received this important document." *Id.* at 1027. The Seventh Circuit held that, "[h]aving failed to make that inquiry, he may not now counter evidence that the prison did not receive his administrative appeal with a bald assertion of a timely filing." *Id.*

The Seventh Circuit explained that requiring a prisoner "to employ the complaint system to ascertain the fate of his appeal and the receipt of filing is compatible with the primary purpose of the exhaustion doctrine: it alerts the prison officials to the existence of the problem and affords an opportunity to repair the injury." *Id.* The court emphasized that the burden of proof on the exhaustion issue is on the defendants. *Id.* But, once the defendants offered evidence that there was no record of an appeal having been filed, the burden shifted to Lockett "to demonstrate that there was a genuine issue of triable fact with respect to that defense." *Id.*

The Seventh Circuit noted that, while Lockett's affidavit was relevant and probative to the issue of whether he had filed his appeal or received a receipt, it was "insufficient to establish that he ever exhausted the opportunity to resolve the matter within the prison system by making a reasonable inquiry into the reason for the absence of a receipt." *Id.* at 1027–28. As the court observed, "[i]n Wisconsin, the regulations clearly gave him the opportunity to do so, but there is no evidence that he availed himself of this tool." *Id.* at 1028.

In this case, had Plaintiff actually submitted the complaint on the typo date of November 16, 2018, within ten days, he should have received written notice that his complaint was received by the ICE office or a return of his complaint. Wis. Admin. Code § DOC 310.10(4), (5). When Plaintiff received nothing, that should have been a "red flag" that something was wrong. *See Lockett*, 937 F.3d at 1027; *Pickens v. Schmidt*, No. 19-CV-741, 2020 WL 4530717, at *2 (E.D. Wis. Aug. 6, 2020). In Wisconsin, inmates have opportunities to address issues they encounter during the complaint process. *Id.* §§ DOC 310.04(1), 310.06. They can file an information request with the ICE, or they can file a grievance to complain about interference with their efforts to file a complaint. In fact, Plaintiff has submitted such an information request as an exhibit, so he knows how to use them. (Docket #25-1 at 9). However, Plaintiff has not presented any evidence that he used such procedures to inquire as to why he had not received a notice from the ICE regarding the complaint he allegedly submitted on November 16, 2018. Instead, Defendants provide evidence that shows that the complaint was filed on December 16, 2018 and that the ICE received it on December 17, 2018 and sent a written receipt to Plaintiff on December 21, 2018. (Docket #21-2 at 1, 11). Thus, under *Lockett*, Plaintiff cannot create a disputed fact when he has provided no evidence that he made a reasonable inquiry into the reason he had not received a receipt of his complaint, or had his complaint returned within ten days of the November 16, 2018 typo date.

Second, the exhibits attached to Plaintiff's RCI-2018-26151 complaint show that he did not file the complaint on November 16, 2018. For example, Plaintiff attached Exhibit H and referenced it within the narrative of his complaint. Exhibit H is a letter Plaintiff wrote to Chapman on November 22, 2018, *six days after* the alleged typo date of November 16, 2018. (*Id.* at 14;

Docket #23-1 at 4). Further, Plaintiff specifically references the letter in his complaint, stating:

> While all this was going down in the moment, I asked to see Captain Chapman, so I could explain my situation to him in person, but CO Tillman [sic] said Captain Chapman wasn't going to talk to me about my Exhibit-H, a few days ago, and now that I have exhausted the chain of command I am following this one issue complaint.

(Docket #21-2 at 11). According to Plaintiff, he asked to speak to Chapman about the November 22, 2018 letter, but Thillemann told him that Chapman was not going to talk to him about it. Plaintiff is filing his one issue complaint because he exhausted the chain of command in an attempt to resolve the claim before filing a complaint. Plaintiff's narrative in the complaint and the attached Exhibit H simply do not support his argument that he filed the complaint on November 16, 2018 instead of December 16, 2018.

Additionally, in his RCI-2018-26151 complaint, Plaintiff specifically referenced his other complaint, RCI-2018-25294, which he resubmitted to ICE on November 27, 2018, *eleven days after* the alleged typo date. "See my Exhibits–A, B, C, D, E, F, G, H, I, J, K and L, – and also review my Complaint Number RCI-2018-25294– to see all the staff I wrote to in an attempt to get relief. The Exhibits–A through L are identical as the Exhibits in RCI-2018-25294." (*Id.*) Because Plaintiff was referencing a complaint that was resubmitted to ICE on November 27, 2018, he could not have written and submitted complaint RCI-2018-26151 on November 16, 2018. Further, any argument that Plaintiff was actually referencing RCI-2018-25294 when it was submitted the first time on November 5, 2018 is meritless because Exhibits B through F and H through K attached to RCI-2018-25294 were all

written *after* November 5, 2018. (*Id.* at 11–31[8]). Thus, even when viewing all the evidence submitted in a light most favorable to Plaintiff, the Court finds that Plaintiff could not have submitted the complaint on November 16, 2018, and, therefore, it is indisputable that Plaintiff submitted the complaint on December 16, 2018.

Lastly, Plaintiff argues that he took reasonable and appropriate steps to exhaust, including writing a letter to ICE Bones on November 7, 2018 regarding that days' incident. Even accepting this as true, it is not enough to show that Plaintiff exhausted his administrative remedies in this case. Plaintiff is required to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell*, 431 F.3d at 284–85. In this case, Plaintiff wrote a letter to ICE Bones regarding the November 7, 2018 incident, but he did not file a complaint regarding the incident within the fourteen-day deadline. Accordingly, because Plaintiff did not file his complaint in the place and at the time the ICRS requires, he has not exhausted his administrative remedies in this case.

In sum, it is undisputed that Plaintiff did not file his complaint RCI-2018-26151 within fourteen days after the November 7, 2018 incident, and he did not provide any reasons for his late filing in his complaint. Consequently, ICE Bones acted within her authority to find there was no good cause to accept a late complaint and to reject the complaint for being

---

[8]Plaintiff and Defendants did not provide the Court complaint RCI-2018-25294 and the exhibits attached to it. However, Plaintiff states in RCI-2018-26151 that "[t]he Exhibits–A through L are identical as the Exhibits in RCI-2018-25294." (Docket #21-2 at 11). Therefore, the Court cites to the identical exhibits attached to RCI-2018-26151.

Page 16 of 18
Case 2:20-cv-00852-JPS   Filed 11/16/21   Page 16 of 18   Document 35

filed outside the fourteen-day deadline. Wis. Admin. Code § DOC 310.10(6)(e). So too did the RA, Warden Kemper, when he affirmed ICE Bones' recommendation of rejecting the complaint. *Id.* § DOC 310.10(10). Therefore, as Plaintiff's complaint RCI-2018-26151 was rejected soley because it was filed after the fourteen-day deadline, Plaintiff has not exhausted his administrative remedies in this case. "[A] prison grievance rejected solely on the basis of untimeliness will not fulfill the exhaustion requirement." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) (citing *Pozo*, 286 F.3d at 1025). Therefore, the Court will grant Defendants' motion for summary judgment on exhaustion grounds and dismiss this case without prejudice.[9]

## 5. CONCLUSION

For the reasons explained above, the Court will grant Defendants' motion for summary judgment for Plaintiff's failure to exhaust his administrative remedies, (Docket #18). Given that the Court is obliged to dismiss this case without prejudice, it will deny as moot Plaintiff's pending motion to withdraw consent to proceed before a magistrate judge, (Docket #13), motion for a continuance, (Docket #22), motion for merit-related discovery, (Docket #27), and motion for summary judgment on the merits, (Docket #32).

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment for failure to exhaust (Docket #18) be and the same is hereby **GRANTED**;

---

[9] Although it seems clear that Plaintiff will not be able to complete the ICRS process for his claims at this late date, dismissals for failure to exhaust are always without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

**IT IS FURTHER ORDERED** that Plaintiff's motion to withdraw consent to proceed before a magistrate judge (Docket #13), motion for a continuance (Docket #22), motion for merit-related discovery (Docket #27), and motion for summary judgment on the merits (Docket #32), be and the same are hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice** for Plaintiff's failure to exhaust administrative remedies.

The Clerk of the Court is directed to enter judgment accordingly

Dated at Milwaukee, Wisconsin, this 16th day of November, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge